**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0194n.06

**No. 12-1393**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Feb 21, 2013*
DEBORAH S. HUNT, Clerk

JOSHUA MCCAIG,

    Plaintiff-Appellee,

v.

BANGOR CITY POLICE OFFICER,
KEVIN C. RABER, Badge No. 396,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

---

**Before:  KETHLEDGE and WHITE, Circuit Judges; and LUDINGTON, District Judge.***

    **HELENE N. WHITE, Circuit Judge.**  Defendant-Appellant Officer Kevin C. Raber appeals the district court's denial of his motion for summary judgment based on qualified immunity in this 42 U.S.C. § 1983 action alleging that he used excessive force in violation of the Fourth Amendment in arresting Plaintiff-Appellee Joshua McCaig.  To the extent Officer Raber bases his appeal on disputed issues of fact, we DISMISS for lack of jurisdiction; to the extent he accepts McCaig's version of the facts, we AFFIRM.

---

*The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I.**

In the early-morning hours of January 1, 2008, Bangor City Police Officer Kevin Raber and his partner responded to a dispatch reporting an altercation outside the Bangor Tavern in Bangor, Michigan. When Officer Raber arrived at the scene, he witnessed Joshua McCaig hit someone in the face. According to McCaig's deposition testimony, Officer Raber told McCaig he was under arrest and McCaig responded by raising his hands over his head in a "surrender motion," and then holding out his hands to be handcuffed. McCaig testified that Officer Raber "smacked" the handcuff on McCaig's left hand while holding McCaig's right arm, and McCaig told Officer Raber that "he didn't have to do that, he doesn't have to be rough with me. I'll go easily." Officer Raber then told McCaig to put his right hand behind his back, but McCaig was unable to do so because Officer Raber was still holding his right arm. McCaig told Officer Raber that he would have to release his arm for McCaig to be able to comply. Officer Raber continued to hold McCaig's arm and again screamed for McCaig to put his hand behind his back. McCaig testified that he pleaded with Officer Raber's partner: "Don't let him do this, I know what he's doing." Officer Raber screamed "put your fucking hand behind your back," yelling so loudly that it hurt McCaig's ear and McCaig "jerked away." Officer Raber engaged McCaig in a position "like a bear hug" while lifting him up and executing a leg sweep, "slamm[ing]" McCaig to the ground back-first. McCaig's right arm broke his fall, and Officer Raber remained on top of McCaig for ten to thirty seconds before getting up.

Officer Raber testified to a different version of the facts. According to Officer Raber, after he grabbed McCaig's arm and told him he was under arrest, McCaig tried to pull away and, although

2

Officer Raber was able to handcuff one of McCaig's hands, McCaig "still proceeded to pull away, walk away." At that point, Officer Raber "took McCaig to the ground" with a leg sweep and notified dispatch that he would need additional backup.

After the arrest, McCaig complained of wrist, shoulder, and neck pain. Officer Raber took McCaig to the hospital, where he was treated for a broken wrist. McCaig later consulted with an orthopedic surgeon who diagnosed McCaig with a radial styloid fracture of the right hand.

McCaig filed this action under 42 U.S.C. § 1983, alleging that Officer Raber used excessive force during the arrest. Officer Raber moved for summary judgment, arguing that his actions did not violate the Fourth Amendment and, alternatively, that he was entitled to qualified immunity. The district court denied summary judgment, concluding that there were unresolved issues of material fact regarding whether McCaig's actions constituted resistance.

## II.

"A district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291, but only 'to the extent that it turns on an issue of law.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). A defendant "may not appeal a district court's summary judgment order [denying qualified immunity] insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995); *see also Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law.") (citations

omitted). Despite this limitation, this court "retain[s] jurisdiction over the legal question of qualified immunity, *i.e.*, whether a given set of facts violates clearly established law." *Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008) (quoting *Boyd v. Baeppler*, 215 F.3d 594, 596 (6th Cir. 2000)). Thus, to the extent Officer Raber makes such an argument, we have jurisdiction over his interlocutory appeal.

"[T]o the extent that the denial of qualified immunity is based on a factual dispute, such a denial falls outside of the narrow jurisdiction of this Court." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008) (citations omitted). When appealing a denial of qualified immunity, a defendant must "be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (quoting *Berryman*, 150 F.3d at 563). A review of Officer Raber's arguments on appeal indicates a reluctance to concede the facts: Officer Raber asserts that McCaig was resistant or, at the very least, did not communicate an intent to comply with Officer Raber's commands. In contrast, McCaig vigorously maintains that he did not resist Officer Raber and clearly communicated an intent to comply.

Notwithstanding Officer Raber's factual assertions, "[i]f . . . aside from the impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged . . . support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction." *Kirby*, 530 F.3d at 481 (quoting *Estate of Carter*, 408 F.3d at 310). Thus, this court may simply ignore Officer Raber's attempts to dispute McCaig's version of the facts, "obviating the need to dismiss the entire appeal for lack of jurisdiction." *Harris v. City of Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citation omitted).

The Supreme Court instructs courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity: (1) "whether a constitutional right would have been violated on the facts alleged" and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The plaintiff bears the ultimate burden of proof to demonstrate that the defendant is not entitled to qualified immunity. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). To the extent jurisdiction is proper, this court reviews denial of summary judgment by a district court, including denial of qualified immunity, de novo. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).

## III.

Officer Raber asserts that he was entitled to qualified immunity as a matter of law because the force he used was not unconstitutionally excessive or, alternatively, that the law violated was not clearly established.

This court has held that the right to be free from excessive force is a clearly established Fourth Amendment right. *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001) (citation omitted). To assess a claim of excessive force under the Fourth Amendment, a court inquires "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Simmonds v. Genesse Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012). Under this standard, the court must consider the totality of the circumstances, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Reviewing the facts in the light most favorable to McCaig, a reasonable jury could find that Officer Raber's use of a takedown maneuver was not objectively reasonable and thus constituted a violation of McCaig's rights under the Fourth Amendment. McCaig was unarmed. In his version of the facts, he made no aggressive gestures or statements, attempted to cooperate, offered no resistance, and stated that he would "go easy."

Although McCaig admits that he did not put his hand behind his back as requested by Officer Raber (because he was being restrained from doing so) and "jerked away" when Officer Raber screamed loudly in his ear, a reasonable jury could find these facts insufficient to justify Officer Raber's use of force. *See Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011) (holding the use of a leg sweep objectively unreasonable where "[a]side from telling the officers to 'get the f—— out of my house' and possibly balling up his fists as his hands hung by his sides, Pershell did not resist arrest or pose an immediate danger to officers at the time he was knocked to the ground"); *Lawler v. City of Taylor*, 268 F. App'x 384, 386–87 (6th Cir. 2008) (holding an officer's "use of force in throwing Lawler to the floor was disproportionate to any threat he faced from Lawler," given that Lawler merely insulted the officer and "raised his left arm slightly"). Accepting the facts in the light most favorable to McCaig, a reasonable jury could conclude that the use of a takedown maneuver was unreasonable under the circumstances.

The next inquiry is whether McCaig's right to be free from excessive force involving a takedown maneuver under the circumstances was "clearly established" at the time of the incident.

We believe that it was. "[C]ases in this circuit clearly establish the right of [persons] who pose no safety risk to the police to be free from gratuitous violence during arrest." *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006) (quoting *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)); *see also Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004) ("We have . . . consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right."). Moreover, this court's prior opinions "clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented." *Meirthew v. Amore,* 417 F. App'x 494, 499 (6th Cir. 2011) (citing *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (holding that when a suspect refuses to follow officer orders, but otherwise poses no safety threat, use of significant force is unreasonable)); *Baker*, 471 F.3d at 607–08 (use of force on a plaintiff that was "unarmed, was compliant, and was not a significant threat" violated clearly established law); *Lustig v. Mondeau*, 211 F. App'x. 364, 369–71 (6th Cir. 2006) (gratuitously causing pain to a "nonviolent and, at most, passively resistant detainee" violated clearly established law). Because it was clearly established that the use of force on a non-resistant or passively-resistant individual may constitute excessive force, and because a reasonable jury could find that McCaig posed little or no threat based on the facts alleged, the district court did not err in denying Officer Raber's motion for summary judgment based on qualified immunity.

**IV.**

For the foregoing reasons, we AFFIRM the denial of qualified immunity to Officer Raber.

7